UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHANE M. WILKINSON                                    CIVIL ACTION

VERSUS                                                NO. 20-3427

PINNACLE LODGING, LLC, *et al.*                       SECTION M (4)


## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants Pinnacle Lodging, LLC ("Pinnacle"), My Hospitality Services, LLC ("MHS"), Yogesh "Chris" Patel, Laura Rosa, and Russell Block (collectively, "Defendants").[1]   Plaintiff Shane Wilkinson responds in opposition.[2]  Defendants reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting summary judgment and dismissing Wilkinson's claims.

## I.  BACKGROUND

This case arises out of an employment dispute.   Wilkinson, a self-identified white, American man,[4] worked at Pinnacle and MHS's Hampton Inn in Covington, Louisiana, from 2017 to 2019.[5]  Wilkinson's immediate supervisor was Rosa, the MHS regional manager, who reported to Block, the MHS director of operations.[6]  Block reported directly to Patel, "the majority owner and top decision-maker for both MHS and Pinnacle."[7]  Wilkinson was first hired for a front-desk

---

[1] R. Doc. 42.
[2] R. Doc. 48.
[3] R. Doc. 51.
[4] R. Doc. 48 at 25.
[5] R. Doc. 13 at 8-9.  Pinnacle owns the Covington Hampton Inn, but MHS manages "all aspects of the operations and employees" there.  R. Doc. 48 at 2.
[6] *Id.* at 3.
[7] *Id.*

position and was eventually promoted to general manager.[8]  He was terminated in December of 2019.[9]

During his two-year tenure at the Hampton Inn, Wilkinson alleges that Rosa made various discriminatory comments in the fall of 2019.[10]  For example, Wilkinson alleges that Rosa once told him "that she was going to replace him and his staff with 'Hispanics' because they work 'cheaper and faster.'"[11]  Rosa also allegedly told Wilkinson that (1) "male [general managers] don't make good general managers, and as far as [she] was concerned, [Wilkinson] shouldn't be here";[12] and (2) "females are more capable" than men.[13]  On one occasion before a scheduled inspection, Rosa allegedly told Wilkinson that if the inspector were a woman, he would need to wear "tight pants" to distract her.[14]  Wilkinson avers that he "frequently" complained to Block about Rosa's alleged harassment, yet Block took no action.[15]  After Wilkinson complained to Block, Rosa allegedly said, "[y]ou're not getting rid of me.  I'm going to be here."[16]  Rosa denies all of these allegations.[17]

Wilkinson also complained of the Hampton Inn's mold infestation.[18]  He represents that "everyone" knew that the Hampton Inn suffered from "a serious mold infestation."[19]  And so, to remediate the issue, Rosa instructed Wilkinson and his staff to scrub the mold with bleach and water and, afterwards, repaint the rooms.[20]  But no matter how much Wilkinson and his staff

---

[8] *Id.* at 4.

[9] R. Doc. 13 at 9.

[10] Rosa became regional manager (and Wilkinson's superior) in August of 2019.  R. Doc. 48 at 18.

[11] *Id.* at 4; *see also* R. Doc. 42-2 at 2.

[12] R. Doc. 48 at 5.

[13] *Id.* at 6.

[14] R. Docs. 42-2 at 2; 48 at 6.

[15] R. Doc. 48 at 6.

[16] *Id.* at 7.

[17] R. Doc. 42-2 at 9.  The Court need not resolve this fact dispute because, even assuming that these statements were said, Wilkinson's action fails for the reasons set forth below.

[18] R. Doc. 48 at 8.

[19] *Id.*

[20] *Id.*

scrubbed and painted, the mold purportedly reappeared very quickly.[21]    Wilkinson allegedly

complained about the "remediation" efforts, believed that these efforts violated Louisiana law or

a health ordinance, and believed that he and his staff were working in an unsafe environment

without the proper protective equipment.[22]    Even before Wilkinson complained, however,

Defendants say they were aware "that the 20 year-old Hotel was likely to have mold issues when

[they] began operating it on February 4, 2015 and expected that it would have mold that could not

be detected until renovations were made."[23]   After Wilkinson complained to his superiors about

Rosa's comments and the mold, he was fired.[24]

Wilkinson asserts five causes of action: (1) "Unlawful Disparate-Treatment Discrimination

and Hostile Work Environment Based on Race, Color, National Origin, and Sex against MHS and

Pinnacle Under Title VII";[25] (2) "Unlawful Disparate-Treatment Discrimination Based on

Retaliation against MHS and Pinnacle under Title VII";[26] (3) "Unlawful Disparate Treatment

Discrimination and Hostile Work Environment Based on Race, Color, National Origin, Sex, and

Retaliation under the Louisiana Employment Discrimination Law (as Amended) against MHS and

---

[21] *Id.*

[22] *Id.* at 9.

[23] R. Doc. 42-2 at 2-3 (footnote omitted).

[24] Although not attached to or cited in the parties' papers, at some point undisclosed to the Court, Wilkinson filed an EEOC complaint. *See* R. Doc. 48-14 at 30. The absence of information regarding the EEOC complaint calls into question the exhaustion of administrative remedies for Wilkinson's claims brought under the Louisiana Employment Discrimination Law ("LEDL"). "'Prior to filing a lawsuit under the Louisiana anti-discrimination statute, a plaintiff must give the proposed defendant written notice that she believes she has been discriminated against at least 30 days before initiating court action.'"   *Bowie v. Hodge*, 2021 WL 53312, at *8 (E.D. La. Jan. 6, 2021) (quoting *Johnson v. Hosp. Corp. of Am.*, 767 F. Supp. 2d 678, 700 (W.D. La. 2011), and citing La. R.S. 23:303(C)). "'[T]he filing of an EEOC charge of discrimination satisfies this notice requirement,' but only as to the discrimination alleged in the EEOC charge." *Id.* (quoting *Johnson*, 767 F. Supp. 2d at 700). The summary-judgment record here is devoid of any information that would permit the Court to determine what discrimination was alleged in his EEOC complaint. The absence of this information likely warrants dismissal of Wilkinson's LEDL claims on procedural grounds. But, because Defendants do not raise the issue and because each of Wilkinson's claims fails on the merits, the Court need not pursue the point.

[25] R. Doc. 13 at 22.

[26] *Id.* at 25.

Pinnacle";[27] (4) "Unlawful Race-Based Discrimination, Harassment, and Retaliation in Violation of Section 1981 against MHS, Pinnacle, Mr. Patel, Ms. Rosa, and Mr. Block in Their Individual Capacities";[28] (5) "Unlawful Disparate-Treatment Discrimination based on Retaliation against MHS and Pinnacle under Louisiana's Environmental Whistleblower Statute"[29] or, in the alternative, "Unlawful Disparate-Treatment Discrimination based on Retaliation against MHS and Pinnacle under Louisiana's Whistleblower Statute."[30]   In substance, Wilkinson's claims are for: (1) disparate-treatment discrimination on the basis of sex, race, and national origin in violation of Title VII, § 1981, and the LEDL; (2) retaliation on the basis of sex, race, and national origin in violation of Title VII, § 1981, and the LEDL; (3) hostile work environment in violation of Title VII and the LEDL; and (4) whistleblower violations under La. R.S. 30:2027 or La. R.S. 23:967. The Court addresses each claim in turn.

## II.  PENDING MOTION

In their motion, Defendants argue that "[d]espite Wilkinson's allegations, he cannot make a *prima faci*[*e*] case to maintain any of his actions" and that "the evidence will show that he was terminated for cause due to his poor work performance, lack of leadership, frequent absences, and threats to quit."[31]   "Wilkinson cannot meet his burden of proof to show he was discriminated

---

[27] *Id.* at 27.  Although Defendants do not address the issue, all of Wilkinson's LEDL claims against Pinnacle are suspect because Pinnacle may not satisfy the state-law definition of "employer."  The LEDL applies only to employers who employ 20 or more employees.  La. R.S. 23:302(2).  Wilkinson alleges that Pinnacle employed approximately 15-20 employees.  R. Docs. 48 at 2; 48-7 at 4 (deposition of Patel estimating 15-20 employees).  This is likely insufficient to establish coverage under the LEDL.  *See Jones v. City of Monroe*, 2019 WL 5488603, at *7 (W.D. La. Oct. 8, 2019), *adopted*, 2019 WL 5491922 (W.D. La. Oct. 24, 2019).  The Court need not dismiss Wilkinson's claims against Pinnacle on these grounds, however, as the claims fail on the merits for other reasons set forth below.

[28] R. Doc. 13 at 28.  In his opposition, Wilkinson states: "Plaintiff does not oppose summary judgment solely with respect to his claims for disparate-treatment discrimination based on race under 42 U.S.C. § 1981 against defendants Yogesh "Chris" Patel and Russell Block.  Otherwise, plaintiff opposes summary judgment on all his remaining claims against all defendants."  R. Doc. 48 at 1 n.1.  Accordingly, the Court will only address Wilkinson's § 1981 discrimination claim against Rosa.

[29] R. Doc. 13 at 30.

[30] *Id.* at 32.

[31] R. Doc. 42-2 at 3 (footnotes omitted).

4

[against] based on race, national origin[], and sex and hostile work environment," say Defendants, because (1) he was replaced by a white, American male; and (2) both Block and Rosa, who allegedly discriminated against him, are white Americans;[32] (3) there is no admissible evidence that Rosa said that men do not make good general managers;[33] (4) Wilkinson has not identified a similarly situated female employee who has been treated more favorably;[34] and (5) he cannot show that he endured any extreme distress resulting from a hostile work environment.[35]   Next, Defendants argue that "Wilkinson cannot meet his burden of proof to show he was discriminated [against through] unlawful disparate treatment ... based on retaliation" because he "was terminated for his poor performance and not for reporting the mold at the Hotel."[36]   Finally, Defendants argue that Wilkinson's whistleblower claims fail because "Wilkinson was not terminated for discussing the existence of mold at the Hotel with upper management," but rather, due to his poor work performance and insubordination.[37]

In opposition, Wilkinson first argues that Defendants' motion should be denied because Defendants "failed to file any substantive statement of uncontested facts in support of their motion," including any nondiscriminatory reason for terminating his employment.[38]   So, says Wilkinson, "[a]ssuming [he] establishes his prima facie cases for discrimination and retaliation, defendants' motion must be summarily denied."[39]   Next, Wilkinson argues that "there is direct, circumstantial, and comparator evidence of status-based discrimination and retaliation" showing "that defendants terminated [him] (1) because of his race, sex, national origin, and because he

---

[32] *Id.* at 7-8.
[33] *Id.* at 10.
[34] *Id.* at 11.
[35] *Id.* at 14.
[36] *Id.* at 17-18 (footnote omitted).  Defendants argue that Wilkinson's § 1981 and LEDL claims fail for the same reasons his Title VII claims fail.  *Id.* at 19.
[37] *Id.* at 20-21.
[38] R. Doc. 48 at 1.
[39] *Id.*

complained about his mistreatment at work, and (2) because [he] repeatedly complained about the defendants' fairly shocking attempt to cover-up a systemic mold infestation at Hampton Inn despite repeated warnings [given by Wilkinson] that his staff could not remediate the infestation and that it was unsafe for them to attempt to do so."[40]  Wilkinson then states that his hostile-work-environment claim succeeds for the same reasons his sex-based discrimination claims succeed.[41]  Finally, Wilkinson says he has established retaliation in violation of the state whistleblower statutes because Defendants testified that they terminated him "in part because he failed to timely remediate the mold-infested rooms at the Hampton Inn."[42]

In reply, Defendants argue that Wilkinson's allegations that Defendants favor women as general managers are meritless because both female and male general managers alike have been terminated due to poor performance.[43]  Further, Defendants maintain that Wilkinson mischaracterizes the testimony of one witness and overlooks that of another, thus calling into question the merits of his claims.[44]  And, finally, Defendants argue that Wilkinson's whistleblower claims fail because (a) MHS had hired a company to remediate the mold, and (b) his unsatisfactory handling of the mold exemplifies his lack of leadership skills and poor job performance.[45]

## III.  LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*

---

[40] *Id.* at 2.
[41] *Id.* at 19 n.5.
[42] *Id.* at 22-23 (emphasis omitted).
[43] R. Doc. 51 at 3.
[44] *Id.* at 3-4.
[45] *Id.*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014). Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet,

7

a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A), (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

## B. Discrimination Claims

Wilkinson asserts multiple discrimination claims against Defendants, arguing that "[w]ithin weeks of Ms. Rosa's promotion to Regional Manager of Operations, she began discriminating, harassing, and reprimanding Mr. Wilkinson based on his sex, race, color, and national origin, because she believed and often said that her employees who were women made better general managers than men, or her employees who were of color, or ethnically Latino, or of Mexican national origin 'work harder, faster, and cheaper' than Mr. Wilkinson and his white, non-Hispanic, or American colleagues at the Hampton Inn."[46] First, he asserts a race-based, gender-

---

[46] R. Doc. 13 at 23.

based, and national-origin-based discrimination claim against MHS and Pinnacle in violation of Title VII.[47]   Second, he asserts a race-based, gender-based, and national-origin-based discrimination claim against MHS and Pinnacle in violation of the LEDL.[48]   Third, he asserts a race-based discrimination claim against MHS, Pinnacle, and Rosa in her individual capacity in violation of 42 U.S.C. § 1981.[49]   Defendants argue that Wilkinson cannot maintain his claims for discrimination because (1) he was replaced by a person of his same race, gender, and national origin; (2) Rosa, who allegedly discriminated against him on the basis of his race, and Block, Rosa's supervisor, are, like Wilkinson, white; (3) there is no evidence that Rosa said that Mexican or Latino employees work harder and cheaper or that men do not make good general managers; and (4) Wilkinson fails to identify a similarly situated female employee who was treated more favorably.[50]   The Court concludes that Wilkinson cannot maintain his claims for discrimination because (1) Defendants establish by a preponderance of the evidence that Wilkinson's termination would have happened regardless of his protected characteristics; (2) Wilkinson cannot establish a *prima facie* case of discrimination with circumstantial evidence because he cannot identify a comparator; and (3) even if he could establish a *prima facie* case, his claims fail because he cannot establish a genuine issue of fact regarding pretext.

The Title VII, LEDL, and § 1981 claims are analyzed under the same Title VII standard.[51] Title VII prohibits employers from intentionally discriminating against any individual with respect

---

[47] *Id.* at 22.

[48] *Id.* at 27.

[49] *Id.* at 28.   In his opposition, Wilkinson requests that the Court grant Defendants' motion for summary judgment "for disparate-treatment discrimination based on race against Chris Patel and Russell Block under 42 U.S.C. § 1981."   Accordingly, the Court will not analyze this § 1981 claim against Patel or Block and, instead, grants the motion in this respect and dismisses the claim against them.

[50] R. Doc. 42-2 at 8-11.

[51] Wilkinson's discrimination claims based on sex, race, and national origin under Title VII, § 1981, and the LEDL may all be analyzed under the Title VII framework.   *Story v. Our Lady of the Lake Physician Grp.*, 779 F. App'x 266, 267 n.2 (5th Cir. 2019) (citing *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) ("The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."); and

to compensation, terms, conditions, or privileges of employment based on the individual's gender or other protected class. 42 U.S.C. § 2000e-2(a)(1); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). "A plaintiff can prove intentional discrimination through either direct or circumstantial evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Wilkinson claims that he "has offered direct evidence of race, sex, and national origin discrimination."[52] Wilkinson also argues that "[e]ven if [his examples] d[o] not suffice as direct evidence of discrimination, [he] proves his disparate-treatment case at least as to sex circumstantially."[53] The Court first addresses Wilkinson's direct evidence, then addresses Wilkinson's circumstantial evidence. Under either the direct-evidence standard or the circumstantial-evidence standard, Wilkinson's disparate-treatment discrimination claims fail.

### 1. Direct Evidence

"'Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption.'" *Daniel v. Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 2022 WL 1055578, at *5 (5th Cir. Apr. 8, 2022) (quoting *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328-29 (5th Cir. 1994)) (alteration omitted). "'Statements or documents which show on their face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action are direct evidence of discrimination.'" *Eaglin v. Tex. Children's Hosp.*, 801 F. App'x 250, 255 (5th Cir. 2020) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)) (alterations omitted); *see also Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir.

---

*La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002) (analyzing LEDL and Title VII claims together under the Title VII analysis because the LEDL and Title VII are "substantively similar")).

[52] R. Doc. 48 at 18.

[53] *Id.* at 19 (emphasis omitted).

2018) ("'In the context of Title VII, direct evidence includes any statement or written document showing a discriminatory motive on its face.'") (quoting *Portis*, 34 F.3d at 329).

"When determining whether comments made at work constitute direct evidence, [the Fifth Circuit] looks to whether the alleged comments are '(1) related to the plaintiff's protected characteristic; (2) proximate in time to the challenged employment decision; (3) made by an individual with authority over the challenged employment decision; and (4) related to the challenged employment decision.'" *Daniel*, 2022 WL 1055578, at *5 (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015)).  "Comments that do not meet these [four] criteria are considered 'stray remarks,' and standing alone, are insufficient to defeat summary judgment." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (footnotes omitted); *see also Etienne*, 778 F.3d at 476.  A court's "ultimate focus" in applying this direct-evidence test "'is on whether the comments prove without inference or presumption that [the protected characteristic] was *a* basis in employment decisions' at [the plaintiff's workplace]." *Herster*, 887 F.3d at 187 (quoting *Etienne*, 778 F.3d at 476) (alterations in original omitted; emphasis in original).

"If ... the plaintiff presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Etienne*, 778 F.3d at 475 (quoting *Brown v. E. Miss. Elec. Power Ass'n,* 989 F.2d 858, 861 (5th Cir. 1993)).  "Summary judgment, then, [is] appropriate only if [the defendant] carrie[s] its burden of showing that it would have made the same decision absent the evidence of discrimination," that is, the defendant "must show that any reasonable jury would conclude that it would have made the same decision absent the

11

discrimination." *Id.* at 477 (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417-18 (5th Cir. 2003)).

### a. The comments at issue.

Wilkinson presents two comments, which Rosa denies making, as direct evidence of race-based, national-origin-based, and gender-based discrimination.[54]   First, Wilkinson alleges that "[d]uring his first meeting with Ms. Rosa, she told Mr. Wilkinson and one of his staff members, Chasity Anthony,[55] that she was going to replace them with 'Hispanics' because they work 'cheaper and faster.'"[56]   Wilkinson argues that this comment is direct evidence of discrimination because it "(1) [was] specifically about Mr. Wilkinson's ... race[] and national origin; (2) [was made] at most four months or so prior to his termination; (3) [was] made by his immediate supervisor who did, in fact, terminate him; and (4) directly describe[s] Ms. Rosa's animus and intention to terminate Mr. Wilkinson from the general manager position."[57]   Although this comment does not directly refer to Wilkinson's protected characteristics (*i.e.*, his race (white) or his national origin (American)), the negative implication is that because Wilkinson is not Hispanic, he would be fired.[58]   *Cf. Eaglin*, 801 F. App'x at 255-56 (finding that statement that "hospital management wanted to replace [the plaintiff and others] with Hispanic employees" was a stray remark only because it was not made by someone with authority over the plaintiff's employment). As a result, this comment is related to Wilkinson's race or national origin.   *See Daniel*, 2022 WL

---

[54] Defendants do not brief Wilkinson's direct-evidence argument but instead argue that Wilkinson relies on circumstantial evidence.

[55] The parties have not identified to the Court Chasity Anthony's race and national origin.

[56] R. Doc. 48 at 18.

[57] *Id.* at 18-19.

[58] *See* R. Doc. 42-9 at 29 (deposition of Wilkinson) ("Q:  Are you alleging that you have any hue or skin pigment issues that are the basis of the discrimination?  A:  No.  Q:  How were you discriminated against on the basis of your national origin?  A:  I wasn't part of the non-Hispanic [sic] crew.").

1055578, at *5.[59]   The comment was also proximate in time to the challenged employment decision, as it was allegedly made "at most four months or so prior to his termination";[60] made by an individual with authority over the challenged employment decision, Rosa;[61] and related to the challenged employment decision, as the comment (that he was going to be replaced because he was not Hispanic) contemplated his termination.  *Id.*  What's more, the comment tends to show that Wilkinson's being white or American (*i.e.*, not Hispanic) was *a* basis in the decision to terminate him.  *See Herster*, 887 F.3d at 187.  Rosa's comment, then, is more than a mere "stray remark," and, likely, direct evidence of race-based or national-origin-based discrimination.

Second, Wilkinson alleges that "[d]uring Mr. Wilkinson's second meeting with Ms. Rosa, she told him that men should not be general managers, and as far as Ms. Rosa was concerned[,] Mr. Wilkinson 'shouldn't be here.'"[62]  According to Wilkinson, this comment was "regularly made."[63]  Because the comment is (1) related to Wilkinson's protected characteristic, his gender; (2) proximate in time to the challenged employment decision ("at most four months or so prior to his termination"); (3) made by an individual with authority over the challenged employment decision (Rosa); and (4) related to the challenged employment decision (as the comment contemplated his termination), *see Daniel*, 2022 WL 1055578, at *5, Wilkinson likely presents direct evidence of gender-based discrimination.

---

[59] Wilkinson identifies other comments Rosa allegedly made about race and national origin.  For example, Wilkinson testified that "[Rosa] wanted [him] to get rid of everybody that was non-Hispanic, because we could hire Hispanics to work cheaper and faster" and that "[Rosa] wanted [him] to get rid of the staff that we have and she was going to bring in a Hispanic crew."  *Id.* at 19.  These additional comments may not constitute direct evidence of discrimination against Wilkinson, however, because they are not connected to his own termination.

[60] R. Doc. 48 at 19.  Defendants do not dispute this timeline.

[61] Nor do Defendants dispute that Rosa had authority over the challenged employment decision.

[62] *Id.* at 18.  More specifically, Wilkinson testified that Rosa said (1) "male GMs don't make good general managers, and as far as she's concerned, [Wilkinson] shouldn't be here," R. Doc. 42-9 at 19; and (2) "'[m]en should not be general managers because they don't have as good of attention to detail as a female.'" *Id.* at 30.

[63] R. Doc. 48 at 18.

### b. Wilkinson would have been terminated regardless of his race, national origin, or sex.

When a plaintiff presents direct evidence, the burden then shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor. *Etienne*, 778 F.3d at 475.[64]   Defendants state that Wilkinson was not terminated because of his race, national origin, or sex; instead, he was "terminated for cause due to his poor work performance, lack of leadership, frequent absences, and threats to quit."[65]   In attempting to refute a few of these purported reasons for his termination, Wilkinson maintains that "defendants have never given a consistent or believable reason for terminating [him]."[66]   But, the record evidence presented by Defendants reflects consistent and sufficiently supported nondiscriminatory reasons that satisfy Defendants' summary-judgment burden.

Both the uncontroverted testimony of Wilkinson's supervisors and his termination letter establish that Wilkinson would have been terminated regardless of his protected characteristics. For example, when asked the basis for Wilkinson's termination, Patel testified: "It was just a lack of – lack of control, lack of his ability to control the hotel and lack of his – what do you call it? – lack of enthusiasm, lack of ability, lack of – just overall lack of performance."[67]   Patel added: "Wilkinson did not show the type of leadership expected of a General Manager and was not proactive."[68]   When asked if he remembered any particular instances of Wilkinson not performing

---

[64] Defendants do not address this burden of proof in their motion for summary judgment as they contend that the evidence is circumstantial and subject to the *McDonnell Douglas* burden-shifting test.   Under the *McDonnell Douglas* framework, a defendant's reasons need only be stated, which Defendants have done; there is no burden of establishing the nondiscriminatory motive by a preponderance of the evidence.   But here, in addition to stating the nondiscriminatory reasons, Defendants have cited record evidence in support of their statements.   Upon review of the cited evidence and Wilkinson's response to it, the Court determines that Defendants have satisfied their burden of showing that the same decision would have been made regardless of Wilkinson's protected characteristics.

[65] R. Doc. 42-2 at 3 (footnotes citing to summary-judgment evidence omitted).

[66] R. Doc. 48 at 25.

[67] R. Doc. 42-3 at 28.

[68] R. Doc. 42-6 at 6 (Patel's amended responses to Wilkinson's first interrogatories).

14

well, Patel testified that Wilkinson "wanted a lot of time off" and "didn't spend a lot of time at the hotel."[69]

Block and Rosa similarly provided nondiscriminatory reasons for Wilkinson's termination. When asked to list "every single reason that [he] had at the time that informed [his] decision to fire [Wilkinson]," Block responded:

> I don't recall every single reason, but I know the top one, example, um, rate management. Um, revenue management, he had no involvement with. That's a responsibility. Documenting employees, that's a responsibility. Any responsibility that falls under the GM, he was basically incapable of or refused to do it. Even when instructed how to do it, he'd come up with some excuse as to why he couldn't do it. So I don't remember every reason, but going from the personnel aspect that he didn't handle, the administration aspect which he didn't handle, financial aspect which he didn't handle, sales and marketing, absolutely nothing. So all those aspects of operating a hotel, he just did not fulfill his obligation to the company.[70]

Block continued: "[Wilkinson] did not develop into the GM that we needed to operate a hotel. ... [J]ust about every responsibility of a GM, he was not up to par on that. The hotel was not doing well, and he made no efforts to improve."[71]   Block also stated "[Wilkinson] had people do his responsibilities, direct GM responsibilities that he should have been doing, um, whether he'd just be too lazy, or didn't know how and didn't want to ask."[72]   Moreover, Rosa testified that "[Wilkinson] threatened to quit several times, so [she] was just hoping they would let him just quit."[73]

Wilkinson's termination letter also establishes that Wilkinson would have been terminated regardless of his gender, race, or national origin.   The letter details that Wilkinson (1) "failed to

---

[69] R. Doc. 42-3 at 28.
[70] R. Doc. 42-4 at 8.
[71] *Id.*
[72] *Id.*   Opposing counsel summarized Block's testimony during Block's deposition: "So what I've written down now, for all the reasons you had to fire Mr. Wilkinson, rate management, revenue management, documenting employees, failure to do his responsibilities, lack of marketing, didn't develop as a GM, hotel was not successful, lack of leadership, and a general perception that he didn't handle his administrative duties the way that he should."   *Id.* at 9.
[73] R. Doc. 42-8 at 30.

review, monitor and make recommendations towards rate management based on demand and area pricing"; (2) represented that various tasks were completed when they were not; (3) failed to delegate tasks despite acknowledging that he needed to delegate them; and (4) threatened to quit on multiple occasions.[74]   These reasons are nondiscriminatory.   None relates to Wilkinson's protected characteristics.

But Wilkinson says that some of the alleged nondiscriminatory reasons Defendants identify did not factor into his termination.   Specifically, he takes issue with one of Block's answers to Wilkinson's interrogatories regarding the basis for Wilkinson's termination, wherein Block indicated that Wilkinson was terminated due to his poor job performance "because the Hampton Inn failed to pass an inspection performed by the Hilton Hotel ....   Wilkinson also failed to renovate rooms and remediate the mold in several of the hotel rooms and conference rooms timely[,] Wilkinson had an unusually high number of absences [and Wilkinson] stated that he quit his position as General Manager before he was terminated."[75]   In an attempt to refute these reasons, Wilkinson says that the Hampton Inn lacks the necessary Internet infrastructure for anyone to pass Hilton's current inspection criteria, his replacement, a man, has repeatedly failed Hilton inspections, and Block admitted that Wilkinson's remediation efforts, approved absences, and threats to quit did not factor into his termination decision.[76]

That Wilkinson disputes a select few of Defendants' reasons, however, cannot overcome Defendants' showing that Wilkinson would have been terminated regardless of his race, national origin, or gender.   *See Etienne*, 778 F.3d at 475.   "'[M]anagement does not have to make proper decisions, only non-discriminatory ones.'"   *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d

---

[74] R. Doc. 42-5 at 1.
[75] R. Doc. 48 at 12.
[76] *Id.* at 12-13.

476, 480 (5th Cir. 2016) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)).  After all, "[t]he anti-discrimination laws do not ask a court to sit as a super-personnel department that reexamines an entity's business decisions or the wisdom of those decisions, only to address whether those decisions are the result of discrimination." *Douglas v. St. John the Baptist Par. Libr. Bd. of Control*, 2022 WL 898746, at *12 (E.D. La. Mar. 28, 2022) (collecting cases). And so, "[t]he court should not weigh the wisdom of particular employment decisions nor question every management decision and work assignment," because "[t]he single issue is whether the employer's decision was motivated by discrimination." *Id.* (collecting cases).  Defendants identify multiple nondiscriminatory reasons from which "any reasonable jury would conclude that [Defendants] would have made the same decision absent the discrimination."  *See Etienne*, 778 F.3d at 477.

### 2. Circumstantial Evidence

"If direct evidence is not present or is unavailing, a plaintiff may use circumstantial evidence to demonstrate discrimination."  *Reilly v. TXU Corp.*, 271 F. App'x 375, 380 (5th Cir. 2008) (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)).  When a plaintiff's Title VII discrimination claim relies entirely on circumstantial evidence, it is subject to the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under the *McDonnell Douglas* framework, the initial burden rests with the plaintiff to establish a *prima facie* case by showing that "she (1) belongs to a protected group, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) either (i) was replaced by someone outside of the protected group, or (ii) was treated less favorably than a similarly situated employee (disparate treatment)."  *Walker v. Smith*, 801 F. App'x 265, 269 (5th Cir. 2020).  If a plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant employer to articulate a

legitimate, nondiscriminatory reason for its actions. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Thereafter, the burden shifts back to the plaintiff to establish that the employer's asserted reason is pretextual. *Id.* The "ultimate burden" of persuasion remains with the plaintiff at "all times." *Id.*; *see also Turner v. Kan. City S. Ry.*, 675 F.3d 887, 900 (5th Cir. 2012) ("The plaintiff's 'ultimate burden' is to 'persuade the trier of fact that the defendant intentionally discriminated against the plaintiff.'") (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (alteration omitted).

### a. Wilkinson cannot establish a *prima facie* case.

Defendants do not contest the first three elements of a *prima facie* case: namely, that Wilkinson (1) belonged to a protected group; (2) was qualified for the position; and (3) suffered an adverse employment action. *See Walker*, 801 F. App'x at 269. The final element, however, is disputed – that is, whether Wilkinson was treated less favorably than a similarly situated employee outside of his protected class. *See id.*; *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001). But, based on the summary-judgment record before the Court, Wilkinson has not shown that he was treated less favorably than a similarly situated non-white, non-American, or female employee.

"The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009)). "This coworker, known as a comparator, must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share the same supervisor or' have his 'employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title

VII claimant."[77]  *Id.* (alteration omitted).  "'By properly showing a significant difference in job responsibilities, [a defendant] can negate one of the crucial elements in [the plaintiff's] prima facie case' of discrimination."  *Herster*, 887 F.3d at 185 (quoting *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981)); *see also Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 832 n.2 (5th Cir. 2015) ("[A] plaintiff who intermittently performed the same duties as a comparator was not sufficient to rebut the differences in responsibility made clear from the summary judgment record.") (quotation and alteration in original omitted).  "A failure to identify a potential comparator (*i.e.*, a similarly situated individual outside the protected class) 'alone justifies dismissal of a plaintiff's Title VII claim.'"  *Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 386 (E.D. La. 2020) (quoting *Alkhawaldeh*, 851 F.3d at 427 (alteration omitted)), *aff'd*, 31 F.4th 990, 995, 1004 (5th Cir. 2022).  Therefore, "[i]f no such comparator exists, the plaintiff cannot establish a *prima facie* case."  *Id.* (citing *Alkhawaldeh*, 851 F.3d at 427).

Wilkinson has not identified a single appropriate comparator.  Wilkinson argues that "[m]ultiple witnesses have testified that multiple other general managers working for MHS-affiliated properties have failed their Hilton or other yearly inspections, but none of those comparators were [sic] terminated because of it,"[78] including: (1) Wilkinson's predecessor, an unnamed woman whose race and national origin are not identified;[79] (2) Wilkinson's replacement, Robert Danbury, who, like Wilkinson, is a white, American male; and (3) the general manager of the MHS-affiliated Hilton hotel in Gonzales, Louisiana, Megan Mahendra, a woman whose race

---

[77] No party provides information regarding the violation histories of Wilkinson or his proffered comparators. Accordingly, the Court will only examine the first two parts of the comparator analysis, namely, that the comparator must (1) hold the same job or job responsibilities as Wilkinson; and (2) share the same supervisor or have his or her employment status determined by the same person.  *See Alkhawaldeh*, 851 F.3d at 426.

[78] R. Doc. 48 at 15.

[79] Wilkinson also cites the testimony of a female general manager of another hotel relating that "she believes at least three other general managers ... – all women – have failed their yearly inspections, but none were [sic] terminated because of it."  *Id.*  Wilkinson does not identify any of them further.

and national origin are not identified.[80]   Wilkinson provides no other information about these alleged comparators.  An unidentified employee, like Wilkinson's predecessor, is not a sufficient comparator.  *See Sanchez v. Bexar Cnty.*, 2022 WL 209286, at *5 (W.D. Tex. Jan. 24, 2022) (holding that a plaintiff's conclusory allegations regarding an employer's treatment of other unidentified employees are insufficient to plead a circumstantial case of discrimination).  And Danbury, an individual who, like Wilkinson, is white, male, and American, is not a sufficient comparator, either, because he is not outside Wilkinson's protected classes (*i.e.*, gender, race, and national origin).  *See Saketkoo*, 510 F. Supp. 3d at 386.  Nor is Mahendra a sufficient comparator. Wilkinson fails to present any evidence as to whether Mahendra (1) held the same job or same job responsibilities as Wilkinson; (2) shared the same supervisor or had her employment status determined by the same person as Wilkinson; or (3) is outside Wilkinson's protected race or national-origin classes (*i.e.*, is not white or American).  Absent this evidence, the Court cannot conclude that Mahendra is a proper comparator.  Because Wilkinson has not identified an appropriate comparator, he cannot carry his initial burden of establishing a *prima facie* case, and so his gender-based, race-based, and national-origin-based discrimination claims must be dismissed.  *See Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 91 (5th Cir. 2020) (affirming grant of summary judgment where plaintiff "provided virtually no evidence concerning [the proffered comparators'] relevant qualifications, nor did she establish that they performed comparable work").  But even had Wilkinson established a *prima facie* case, dismissal is still warranted for his failure to show a genuine issue of fact regarding pretext.

---

[80] R. Doc. 48-1 at 18.

**b. Wilkinson cannot establish a genuine issue of fact regarding pretext.**

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to proffer a legitimate, nondiscriminatory reason for his action." *Watkins v. Tregre*, 997 F.3d 275, 281-82 (5th Cir. 2021) (citing *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). The defendant's burden is one of production, not persuasion. *Id.* at 282; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To meet its burden of production, the defendant "'must articulate a nondiscriminatory reason with sufficient clarity to afford [the plaintiff] a realistic opportunity to show that the reason is pretextual.'" *Watkins*, 997 F.3d at 282 (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015)). "The defendant's burden during this second step is satisfied by producing evidence, which, '*taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action.'" *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original). As discussed above,[81] Defendants have proffered a number of nondiscriminatory reasons for terminating Wilkinson, thereby satisfying their summary-judgment burden of production.

When the defendant meets its burden of production, as here, the burden then shifts to the plaintiff to "substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price*, 283 F.3d at 720. Although a plaintiff need not *prove* pretext at the summary-judgment stage, a plaintiff must raise a genuine issue of fact regarding pretext. *Guthrie v. Tifco Indus.*, 941 F.2d 374, 378 (5th Cir. 1991). A plaintiff "'may establish pretext either through evidence of disparate treatment or by showing that [the defendant's] proffered explanation is false or "unworthy of credence."'" *Watkins*, 997 F.3d at 283

---

[81] *See supra* Section III(B)(1)(b).

(quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).   Even when such a showing is made, however, it is not always enough to prevent summary judgment if "'no rational factfinder could conclude that the action was discriminatory.'"  *Lockhart v. Republic Servs., Inc.*, 2021 WL 4955241, at *3 (5th Cir. Oct. 25, 2021) (quoting *Price*, 283 F.3d at 720).

"[The Fifth Circuit] has held that a plaintiff's summary judgment proof must consist of more than 'a mere refutation of the employer's legitimate nondiscriminatory reason.'"  *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993)).  A subjective disbelief of the employer's reason is not enough, as the ultimate fact issue is whether the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr.*, 509 U.S. at 519; *see also Reeves*, 530 U.S. 133 at 153 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").   "Thus, the plaintiff is not relieved of her burden to present evidence that will permit a rational factfinder to infer intentional discrimination."  *Douglas*, 2022 WL 898746, at *12 (citing *Harville v. City of Hous.*, 945 F.3d 870, 877 (5th Cir. 2019)).  "Even in the face of sufficient evidence for a reasonable factfinder to find pretext and reject the nondiscriminatory reason, if no rational factfinder could conclude that the action was discriminatory, such as when the record conclusively reveals some other, nondiscriminatory reason for the decision, or if the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue and there is abundant and uncontroverted independent evidence that no discrimination occurred, summary judgment will be proper."  *Id.* (citing *Harville*, 945 F.3d at 876-77).

"If the employer offers more than one [nondiscriminatory] reason, the plaintiff 'must put forward evidence rebutting *each* of the nondiscriminatory reasons the employer articulates.'"

*Jones*, 8 F.4th at 368-69 (quoting *Wallace*, 271 F.3d at 220) (emphasis in original). "Because the plaintiff bears the ultimate burden of proving that intentional discrimination was a motivating factor by a preponderance of the evidence, she 'must produce *substantial evidence* that the defendant's nondiscriminatory reason is merely a pretext for impermissible discrimination.'" *Pippins v. Tangipahoa Par. Council*, 2004 WL 1575410, at *7 (E.D. La. July 13, 2004) (quoting *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 115 (5th Cir. 2003)) (emphasis in original). "'Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.'" *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 339 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.,* 333 F.3d 572, 579 (5th Cir.2003)). "'Where the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate.'" *Pippins*, 2004 WL 1575410, at *7 (quoting *Read*, 72 F. App'x at 115)). "'Whether summary judgment is appropriate depends on numerous factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered."'" *Riley*, 379 F. App'x at 339-40 (quoting *Price,* 283 F.3d at 720).

Wilkinson cannot carry his summary-judgment burden. First, Wilkinson fails to address each of Defendants' nondiscriminatory reasons for his termination. *See Jones*, 8 F.4th at 368-69. In response to the various nondiscriminatory reasons, Wilkinson only addresses his failure to pass an inspection and renovate the rooms, his high number of absences, and his threats to quit.[82] He does not address Defendants' other proffered reasons, like his lack of leadership, failure to complete administrative duties, and inability to manage sales and marketing. Instead, Wilkinson

---

[82] R. Doc. 48 at 12-13.

argues generally that Defendants' hiring of Danbury "was mere pretext to try and later gin up an affirmative defense to Mr. Wilkinson's claims of discrimination in the case."[83]  It is unclear which nondiscriminatory reason this argument is meant to refute.  In any event, this indisputably tenuous and conclusory inference of pretext is insufficient to rebut each of the nondiscriminatory reasons Defendants articulate.  *See Jones*, 8 F.4th at 368-69.  "Where, as here, the employee fails to adduce evidence refuting a rational, non-discriminatory reason articulated by the employer, pretext cannot be established by the subjective belief that the illegitimate criterion ... motivated the employer's decision."  *Pippins*, 2004 WL 1575410, at *9 (citing *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995)).  Hence, summary judgment on this basis alone is appropriate.

Second, Wilkinson has not raised a genuine issue of fact regarding pretext because he fails to present evidence of (1) disparate treatment; or (2) facts that cast doubt on the credence of Defendants' stated justifications for their employment action.  "[T]o establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under 'nearly identical' circumstances."  *Moore v. Reeves Cnty.*, 360 F. App'x 546, 548 (5th Cir. 2010) (citing *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir.2005)).  The Court has already found that Wilkinson did not produce sufficient evidence that similarly situated employees were treated more favorably in nearly identical circumstances.[84]  Therefore, Wilkinson has not established discrimination through disparate treatment.

Furthermore, Wilkinson has not shown that Defendants' stated nondiscriminatory reasons are false or unworthy of credence.  "'[A]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action.'"  *Moore*, 360 F. App'x at 548-49 (quoting *Laxton*, 333 F.3d at 578).  Wilkinson has not introduced material evidence as to whether

---

[83] *Id.* at 15.
[84] *See supra* Section III(B)(2)(a).

Defendants' reasons were pretextual; instead, he simply states that "no defendant has offered a consistent or credible reason for firing [him]."[85]  This is insufficient to show that discrimination lay at the heart of the Defendants' decision to terminate him.  *See Price*, 283 F.3d at 720.  "Absent countervailing evidence, the trier of fact must accept the defendant's explanation as the real reason for the discharge."  *Guthrie*, 941 F.2d at 378 (citing *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 566 (5th Cir. 1983)).  Because Wilkinson points to no genuine fact issue concerning whether each of Defendants' stated reasons for his termination was pretextual, Defendants are entitled to judgment as a matter of law.  But had Wilkinson shown substantial evidence of pretext, which he has not, his claims still fail because no rational factfinder could conclude that his termination was discriminatory where, as previously discussed,[86] the record conclusively reveals that Wilkinson would have been terminated regardless of his protected characteristics.  *See Douglas*, 2022 WL 898746, at *12.  Therefore, Wilkinson cannot show that but for his being a white American male, he would not have been fired.  Accordingly, because Wilkinson fails to raise a genuine issue of fact regarding pretext, his race-based, national-origin-based, and gender-based discrimination claims against Defendants must be dismissed.

## C. Retaliation Claims

Wilkinson asserts multiple retaliation claims against the various Defendants, alleging that he would not have been terminated but for his complaints about Rosa's alleged discrimination and harassment.[87]  First, he asserts a race-based, gender-based, and national-origin-based retaliation claim against MHS and Pinnacle in violation of Title VII.[88]  Second, he asserts a race-based, gender-based, and national-origin-based retaliation claim against MHS and Pinnacle in violation

---

[85] R. Doc. 48 at 12.
[86] *See supra* Section III(B)(1)(b).
[87] R. Doc. 13 at 26.
[88] *Id.* at 25-27.

of the LEDL.[89]   Third, he asserts a race-based retaliation claim against MHS and Pinnacle, and

Patel, Rosa, and Block in their individual capacities in violation of § 1981.[90]   Defendants argue

that Wilkinson's retaliation claims fail because he "was terminated for his poor performance as a

General Manager, not for any protected activity."[91]   The Court concludes that Wilkinson's

retaliation claims fail because it is unlikely that he can establish a *prima facie* case and, even if he

could, he has not raised a genuine issue of fact regarding pretext.

Wilkinson's retaliation claims are analyzed under the Title VII standard.[92]   "Title VII

protects an employee only from retaliation for complaining about the types of discrimination it

prohibits." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020) (quotation and citation

omitted).   When a Title VII retaliation claim is based on circumstantial evidence, as here,[93] a court

analyzes it under the *McDonnell Douglas* burden-shifting framework. *Saketkoo*, 31 F.4th at 1000.

---

[89] *Id.* at 27.  The LEDL does not recognize a claim for retaliation.  *Glover v. Smith*, 478 F. App'x 236, 243 (5th Cir. 2012) (citing *Lowry v. Dresser, Inc.,* 893 So.2d 966, 967 (La. App. 2005)); *see also Johnson v. JP Morgan Chase Bank, N.A.*, 293 F. Supp. 3d 600, 615 (W.D. La. 2018).  However, even if it did, Wilkinson's claim would be analyzed under the Title VII standard.  *See Glover*, 478 F. App'x at 244 (observing that if a retaliation claim under the LEDL is appropriate, the claim would fail under the Title VII retaliation analysis).  For the reasons set forth below, because Wilkinson's mirror-image federal claim for retaliation fails, any retaliation claim he might have under the LEDL would also fail.

[90] R. Doc. 13 at 28.  While Wilkinson does not oppose summary judgment with respect to his § 1981 claims for disparate-treatment discrimination based on race against Patel and Block, *see* R. Doc. 48 at 1 n.1, he does not state that summary judgment on his retaliation claims under § 1981 against Patel and Block is unopposed.  Accordingly, the Court includes Patel and Block in its retaliation analysis.

[91] R. Doc. 42-2 at 18.

[92] Like Wilkinson's disparate-treatment discrimination claims, his Title VII and § 1981 retaliation claims are analyzed under the Title VII standard.  *See Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 834-35 & n.18 (5th Cir. 2022) ("As with discrimination, retaliation claims under § 1981 and Title VII 'are parallel causes of action' that require 'proof of the same elements in order to establish liability.'") (quoting *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 (5th Cir. 2003)); *see also Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (applying the Title VII retaliation framework to a claim of retaliation under § 1981).

[93] Wilkinson asserts that "[a]fter [he] complained to Russell Block about Laura Rosa's discriminatory comments, Ms. Rosa approached him at work and told him 'you're not getting rid of me[;] I'm going to be here.'"  R. Doc. 48 at 21.  Wilkinson argues that this statement "is likely sufficient direct evidence to make out a prima facie case for retaliation."  *Id.*  It is not.  For Rosa's statement to constitute direct evidence, it must "'prove[] the fact of intentional retaliation without inference or presumption.'"  *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007) (quoting *Fierros v. Tex. Dept. of Health,* 274 F.3d 187, 195 (5th Cir. 2001)).  The Court cannot find that Rosa's statement, "you're not getting rid of me[;] I'm going to be here," on its face, establishes without inference or presumption that Wilkinson was subsequently terminated as a result of his complaints.  Without more, the statement could just as well relate to termination for poor job performance.  Therefore, Wilkinson's retaliation claims cannot survive on direct evidence, so the Court applies the circumstantial-evidence standard.

Under the *McDonnell Douglas* framework, the plaintiff-employee has the initial burden of establishing a *prima facie* case of retaliation by showing (1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action. *Id.* "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to introduce evidence of a legitimate, nonretaliatory reason for the adverse employment action." *Id.* (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05) (5th Cir. 1996)).  If the defendant-employer meets its burden, the "'plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real retaliatory purpose.'" *Id.* (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)) (alteration omitted).

### 1. Wilkinson's *prima facie* case is suspect.

Defendants maintain that Wilkinson's *prima facie* case fails because he cannot establish that a causal link existed between any protected activity and the adverse employment action.[94] But the Court finds that Wilkinson's *prima facie* case is suspect for a different reason: his failure to show activity protected by Title VII.[95]

Wilkinson identifies his complaints to upper management regarding Rosa's alleged sexist and racist comments as protected activity.[96]  "'Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII.'" *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830-31 (E.D. La. 2012) (quoting *Ackel v. Nat'l Commc'ns, Inc.*,

---

[94] R. Doc. 42-2 at 18.

[95] Defendants treat Wilkinson's "reporting the mold [in] the Hotel" as the protected activity. *Id.*  They argue that because "Wilkinson cannot show that a causal link existed between the protected activity (allegedly reporting the mold) and the adverse employment action, Wilkinson cannot maintain a *prima facie* [case] for retaliation." *Id.*  But reporting mold is not a practice rendered unlawful by Title VII.  Therefore, it is not a protected activity.

[96] R. Doc. 48 at 21.

339 F.3d 376, 385 (5th Cir.2003)).  Thus, Title VII's antiretaliation provision outlines two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"); and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").  *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009).  Wilkinson's alleged protected activity falls under the opposition clause.

"[T]he opposition clause does not require opposition alone; it requires opposition of a practice made unlawful by Title VII."  *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (emphasis omitted).  Thus, an employee "cannot simply complain that she received unfair or undesirable treatment," *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013), she must refer "to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its alleged discriminatory practices."  *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017).  "The opposition must indicate that the plaintiff views the employment practice as discriminatory."  *Wilkerson v. Par. of Jefferson*, 2021 WL 4989899, at *14 (E.D. La. Oct. 27, 2021) (citing *Breeding v. Dep't of Interior*, 2015 WL 1809977, at *8 (E.D. La. Apr. 21, 2015).  But this standard does not require a plaintiff to prove that the complained-of employment practice was unlawful; rather, the plaintiff need only reasonably believe that the complained-of employment practice was unlawful.  *Rite Way*, 819 F.3d at 240 (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1137-40 (5th Cir. 1981)).[97]  "[T]he reasonable belief standard recognizes there is some zone of conduct that falls

---

[97] "The Fifth Circuit has repeatedly held that the opposition clause does not actually require the opposed conduct to, in fact, violate Title VII."  *Saketkoo*, 510 F. Supp. 3d at 393.  "Instead, it is 'enough that the plaintiff reasonably believed the employment practice to be unlawful.'"  *Id.* (quoting *Rite Way*, 819 F.3d at 240) (alteration omitted).  Ultimately, "[w]hile the reasonable belief standard is 'in tension with the plain text' of the statute, it 'remains good law.'"  *Id.* (citing *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 n.2 (5th Cir. 2013), and *Rite Way*, 819 F.3d at 240).  "The Supreme Court has not taken a position on the reasonable belief standard."  *Rite Way*, 819 F.3d at 240.

short of an actual violation but could be reasonably perceived to violate Title VII." *Id.* at 242.  A plaintiff's belief must be objectively reasonable.  *Armstrong v. K & B La. Corp.*, 488 F. App'x 779, 782 (5th Cir. 2012) ("For [plaintiff's] actions to satisfy the opposition clause, [plaintiff] must have had an objectively reasonable belief that [defendant] was engaged in employment practices barred by Title VII."); *see also Ellis v. Compass Grp. USA, Inc.*, 426 F. App'x 292, 296 (5th Cir. 2011).  A plaintiff's "subjective belief the incidents were retaliatory, without more, is not sufficient to survive summary judgment." *Peace v. Harvey*, 207 F. App'x 366, 369 (5th Cir. 2006) (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)).

Wilkinson maintains that he "frequently complained to Russell Block about Laura Rosa's harassment,"[98] "sexist and racist comments at work,"[99] and "[her] treatment of him."[100]  "An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim." *Tureaud*, 294 F. App'x at 914-15.  But an informal complaint that does not indicate that the plaintiff views the employment practice as discriminatory is not protected activity. *See Wilkerson*, 2021 WL 4989899, at *14; *Saketkoo*, 510 F. Supp. 3d at 394 ("[T]he opposition must indicate that the plaintiff views the employment practice as discriminatory.").  As noted, "'an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its discriminatory practices.'" *Saketkoo*, 31 F.4th at 1000 (quoting *Allen*, 721 F. App'x at 326).  And here, the Court has no competent summary-judgment evidence that Wilkinson's complaints

---

[98] R. Doc. 48 at 6.  Wilkinson also states that he complained to Ashley Vanderhoff, the assistant general manager of the Hampton Inn, about how "Ms. Rosa had made racially inappropriate comments to Mr. Wilkinson and his staff, and Mr. Wilkinson felt that Ms. Rosa was 'targeting' him because of his race and sex." *Id.* at 7.  Vanderhoff testified that she "know[s] [Wilkinson] complained about Laura [Rosa]," but she was "not sure what the detail of it was."  R. Doc. 48-6 at 21.  Vanderhoff, however, is not one of Wilkinson's supervisors.  Therefore, this informal complaint does not satisfy the opposition clause and cannot be used as evidence of retaliation. *See Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008).

[99] R. Doc. 48 at 21.

[100] R. Doc. 48-1 at 31.

indicated that he viewed the alleged comments as discriminatory based on his race, national origin, or gender.

What the record shows, however, is, in Wilkinson's own words, that he "reported the issues of [Rosa]'s statements to Russell Block and [he] got no assistance from him."[101]  And so, while Wilkinson may have complained to his supervisor about Rosa's statements in general, "nothing in the record supports the claim that [he] reported [Rosa's] behavior as discriminatory before [Defendants] made the decision" to terminate him.  *Saketkoo*, 31 F.4th at 1000.  That means that there is no evidence that Wilkinson complained about experiencing discrimination based on his gender, race, or national origin sufficient to put Defendants on notice that Rosa's conduct was discriminatory based on any protected characteristics.  *See Wilkerson*, 2021 WL 4989899, at *14 (finding that plaintiff's complaints, which failed to implicate plaintiff's protected status or give any notice that employer's conduct was discriminatory, did not constitute protected activity); *see also Saketkoo*, 31 F.4th at 1000 (concluding that there was no evidence plaintiff engaged in a protected activity where plaintiff "did not ... allege that she complained about experiencing gender-based discrimination sufficient to put [her employer] on notice").  Without evidence that Wilkinson complained that he was being discriminated against based on his protected characteristics, there is no protected activity, and Wilkinson's retaliation claims fail.  *See Saketkoo*, 510 F. Supp. 3d at 394-95 (finding that instances where plaintiff complained were not protected activity because she did not state that (1) she believed she was experiencing gender-based discrimination; or (2) she viewed the conduct as discriminatory).

If the Court were to assume that the protected-activity prong of the *prima facie* case analysis is satisfied for purposes of these motions (which is not unreasonable considering that

---

[101] R. Doc. 42-9 at 19.

Defendants do not challenge the element of protected activity), it is likely that Wilkinson can satisfy the other two elements necessary to establish a *prima facie* case of retaliation. Defendants do not dispute that Wilkinson's termination was an adverse employment action.[102] Instead, they take issue with the third prong of the *prima facie* case analysis: that a causal link existed between protected activity and the adverse employment action. Defendants argue that "Wilkinson cannot establish a *prima faci[e]* case for retaliation because Wilkinson was terminated for his poor performance and not for reporting the mold [in] the Hotel," which they say is the protected activity at issue.[103] Disregarding the disconnect between Wilkinson's and Defendants' view of the protected activity, Defendants' formulation of the argument is not the standard employed at the *prima facie* stage. Contrary to Defendants' position, at the *prima facie* stage of the retaliation analysis, the plaintiff need not show that "but for" the protected activity, he would have suffered adverse employment action.

At the *prima facie* stage, the causation standard is much less stringent than it is at the final, pretext stage. *See Williams v. B R F H H Shreveport, L.L.C.*, 801 F. App'x 921, 925-26 (5th Cir. 2020). At the *prima facie* stage, a plaintiff need only show that "'the protected activity and the adverse employment action are not completely unrelated.'" *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020) (quoting *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006)). The Fifth Circuit "look[s] to three factors when considering the causal link prong [at the *prima facie* stage]: '(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination.'" *Valderaz v. Lubbock Cnty. Hosp. Dist.*, 611 F. App'x 816, 823 (5th Cir. 2015) (quoting *DeHart v. Baker Hughes Oilfield Operations,*

---

[102] *See* R. Doc. 42-2 at 17-18.
[103] *Id.* at 18.

*Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007)).  Wilkinson seems to imply that temporal proximity establishes the causal-link prong.[104] "While suspicious timing alone is rarely sufficient to establish the requisite causal connection, this Court allows for a prima facie case to be made on temporal proximity alone if it is 'very close.'"  *Valderaz*, 611 F. App'x at 823 (quoting *Washburn*, 504 F.3d at 511) (internal citation omitted).  For example, "a period of two-and-a-half months, a period of two months, and a period of six-and-a-half weeks are close enough to show a causal connection." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020) (internal citations omitted).  Even "'a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.'"  *Hypolite v. City of Hous.*, 493 F. App'x 597, 606 (5th Cir. 2012) (citing *Evans v. City of Hous.*, 246 F.3d 344, 354 (5th Cir. 2001)).

At this juncture, the Court assumes, but does not decide, that the temporal proximity between Wilkinson's protected activity (his complaints that allegedly occurred within four months of his termination) and his termination (December 20, 2019)[105] falls within the time-periods sufficient to establish the causal-link prong of the *prima facie* case, at least for purposes of summary judgment.  Consequently, the Court assumes that Wilkinson can establish a *prima facie* case of retaliation under Title VII, but dismissal is nevertheless warranted for his failure to show a genuine issue of fact regarding pretext.

### 2. Wilkinson cannot establish a genuine issue of fact regarding pretext.

After a plaintiff establishes a *prima facie* case of retaliation, "the burden then shifts to the employer to articulate a legitimate, ... nonretaliatory reason for its employment action."  *McCoy*,

---

[104] *See* R. Doc. 48 at 21 ("Mr. Wilkinson's complaints were therefore made, at most, within four months of his termination.  In the Fifth Circuit, four months from protected activity to adverse action is 'sufficient to satisfy the causal connection for summary judgment purposes.'") (quoting *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007)).

[105] *Id.*

492 F.3d at 557 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)).  "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."  *Id.* (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

Here, Defendants satisfy their burden.  Defendants maintain that "Wilkinson was terminated for his poor performance and not for [engaging in protected activity]."[106]  And, despite Wilkinson's argument that Defendants make "naked assertions" regarding his work performance,[107] "'[e]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.'"  *Saketkoo*, 31 F.4th at 1002 n.8 (discussing an employer's proffered nonretaliatory reasons) (quoting *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).  This reason, especially when viewed alongside the additional reasons previously identified,[108] is sufficient to satisfy Defendants' burden of production.

When the employer meets its burden of production, "the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose."  *Newbury v. City of Windcrest*, 991 F.3d 672, 678 (5th Cir. 2021) (citing *McCoy*, 492 F.3d at 557).  In other words, "[i]t is [the plaintiff's] burden 'to prove that a retaliatory motive was the but-for cause of, not merely a motivating factor behind, the decision to terminate him.'"  *Valderaz*, 611 F. App'x at 823 (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 547 F. App'x 484, 490 (5th Cir. 2013)) (alteration omitted); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation ....  This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.").  "'A plaintiff may show

---

[106] R. Doc. 42-2 at 18.
[107] R. Doc. 48 at 24 n.6.
[108] *See supra* Section III(B)(1)(b).

pretext either through evidence of disparate treatment or by showing that the employer's proffered

explanation is false or unworthy of credence.'" *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th

Cir. 2017) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)).

To survive summary judgment at the pretext stage, a plaintiff "must do more than just

dispute the underlying facts and argue that [the employer] made the wrong decision." *LeMaire v.

La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Instead, "a plaintiff must show

'a conflict in substantial evidence' on the question of whether the employer would not have taken

the adverse employment action but for the protected activity." *Brown*, 969 F.3d at 577 (quoting

*Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)). "'Evidence is substantial if it is

of such quality and weight that reasonable and fair-minded men in the exercise of impartial

judgment might reach different conclusions.'" *Id.* (quoting *Musser*, 944 F.3d at 561-62). "Even

if a plaintiff's protected conduct is a substantial element in a defendant's adverse employment

action, no liability for unlawful retaliation arises if the employee would have faced that discipline

even without the protected conduct." *Wantou v. Wal-Mart Stores Tex.*, L.L.C., 23 F.4th 422, 437

(5th Cir. 2022). Importantly, to carry his summary-judgment burden, "the plaintiff must rebut

each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy*, 492 F.3d

at 557.

For the same reasons discussed above,[109] Wilkinson does not meet his summary-judgment

burden. First, Wilkinson fails to address each of Defendants' nonretaliatory reasons for his

termination. *See McCoy*, 492 F.3d at 557. He argues that, "[o]n the merits, defendants have never

given a consistent or believable reason for terminating Mr. Wilkinson, and certainly not one that

rebuts the direct evidence of Rosa's over[t] discrimination and management's implied retaliation

---

[109] *See supra* Section III(B)(2)(b).

as a matter of law."[110]   But this unsupported conclusion is insufficient to rebut each of the nonretaliatory reasons Defendants articulate, including, for example, his poor job performance, his failure to complete or delegate tasks, and his failure to document employees.   Yet to survive summary judgment, a plaintiff must present facts to rebut each and every legitimate, nonretaliatory reason advanced by defendant.   And so, on this basis alone, summary judgment is appropriate.  *Cf. Paulin v. U.S. Dep't of Homeland Sec.*, 2022 WL 952262, at *16 (E.D. La. Mar. 30, 2022) (granting summary judgment when plaintiff failed to address each of defendant's nondiscriminatory reasons), *appeal docketed*, No. 22-30285 (5th Cir. May 11, 2022).

Second, Wilkinson has not raised a genuine issue of fact regarding pretext because he fails to present evidence of (1) disparate treatment; or (2) facts that cast doubt on the credence of Defendants' proffered justifications for his termination.   "Typically, 'a plaintiff who proffers the [disparate] treatment of a fellow employee must show that the plaintiff's termination was taken "under nearly identical circumstances" as those faced by the comparator.'"  *Brown*, 969 F.3d at 580 (quoting *Garcia*, 938 F.3d at 244).   But, for the reasons previously explained,[111] Wilkinson has not identified a comparator and, therefore, cannot show evidence of disparate treatment.  *See Paulin*, 2022 WL 952262, at *14-15 (finding plaintiff failed to establish pretext though disparate treatment where plaintiff's alleged comparator was not a "nearly identical, similarly situated individual").   Furthermore, Wilkinson has not shown that each of Defendants' proffered nonretaliatory explanations is false or unworthy of credence.   His generalized, conclusory, and unsubstantiated assertion regarding Defendants' allegedly inconsistent reasons for terminating him is insufficient by itself to create a genuine issue of fact that each of Defendants' proffered reasons for termination is pretextual.   Yet, Wilkinson seems to imply that temporal proximity alone

---

[110] R. Doc. 48 at 25.
[111] *See supra* Section III(B)(2)(a).

establishes pretext.[112]  For example, in Wilkinson's sworn declaration, he "testified that his work performance was not critiqued until August 2019, after he kept complaining about mold and Ms. Rosa's comments to him."[113]  Wilkinson also asserts that he complained to Block about Rosa's comments just two weeks before his termination.[114]  While temporal proximity may suffice to establish causation in the *prima facie* analysis, it is insufficient alone to demonstrate that a proffered reason is pretextual.  *Brown*, 969 F.3d at 579 (citing *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)).  Absent any other evidence, which Wilkinson does not cite and the Court has not identified, Wilkinson has not raised a genuine issue of fact regarding pretext.

Third, Wilkinson has not established that "but for" his complaints about Rosa's conduct, his termination would not have occurred.  *See Garcia*, 938 F.3d at 243.  As previously discussed,[115] Defendants have shown that Wilkinson's employment would have been terminated regardless of his race, national origin, or sex.  There is no evidence that Wilkinson would have been terminated solely because – or but for – his protected characteristics.  Therefore, because Wilkinson cannot establish a genuine issue of fact regarding pretext as to Defendants' nonretaliatory reasons for his termination, his retaliation claims must be dismissed.

**D.  Hostile Work Environment Claims**

Wilkinson asserts two hostile-work-environment claims against MHS and Pinnacle, one under Title VII[116] and the other under the LEDL.[117]  Rosa created a hostile work environment, says Wilkinson, because she (1) "believed and often said that her employees who were women

---

[112] *See* R. Doc. 48 at 21-22.
[113] R. Doc. 48-1 at 31.
[114] R. Doc. 48 at 21-22 (noting that Wilkinson complained to Block about Rosa's comments just two weeks before his termination).
[115] *See supra* Section III(B)(1)(b).
[116] R. Doc. 13 at 22.
[117] *Id.* at 27.

made better general managers than men, or her employees who were of color, or ethnically Latino, or of Mexican national origin 'work harder, faster, and cheaper' than Mr. Wilkinson and his white, non-Hispanic, or American colleagues at the Hampton Inn";[118] and (2) suggested that Wilkinson wear "tight pants" to curry favor with female inspectors.[119]  Defendants respond that "Wilkinson cannot show that he endured any extreme distress resulting from a hostile work environment"[120] and that "Rosa's actual behavior was not offensive, hostile or[] abusive under the law."[121]  Even if Wilkinson could prove Rosa's alleged comments occurred, say Defendants, the record reflects that the remarks were made for only a couple of weeks to a month,[122] such that they were not frequent or severe enough to support a cause of action.[123]  The Court agrees.  Wilkinson's claims fail because (1) the comments were not severe or pervasive; and (2) there is no evidence that the comments unreasonably interfered with his work performance.

Wilkinson's state and federal hostile-work-environment claims are analyzed under the Title VII standard.[124]  "In addition to protecting employees from race, sex, and national origin discrimination in the workplace, Title VII also makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'"  *Wantou*, 23 F.4th at 432 (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)).  "To survive summary judgment on a hostile work environment claim, a plaintiff must show that (1) he is a member of a

---

[118] *Id.* at 23.

[119] *Id.* at 23-24.

[120] R. Doc. 42-2 at 14.

[121] *Id.* at 17.

[122] Wilkinson points to no summary-judgment evidence to support his conclusory assertion that these sorts of comments were "routine" or "regularly made."  *See* R. Doc. 48 at 18.

[123] R. Doc. 42-2 at 15.

[124] "Because LEDL's provisions overlap federal anti-discrimination protections under Title VII, courts generally look to federal jurisprudence developed under Title VII in applying LEDL."  *Rodrigue v. PTS Mgmt. Grp., LLC*, 550 F. Supp. 3d 376, 393 (W.D. La. 2021) (analyzing state and federal hostile-work-environment claims under the same standard) (citing *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007), and *Baker v. FedEx Ground Package Sys., Inc.*, 278 F. App'x 322 (5th Cir. 2008)).

protected class; (2) he suffered unwelcomed harassment; (3) the harassment was based on his membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *Id.* at 433 (quoting *West v. City of Hous.*, 960 F.3d 736, 741-42 (5th Cir. 2020)). "For harassment to affect a term, condition, or privilege of employment, it 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *West*, 960 F.3d at 741-42). "The environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

"The totality of the employment circumstances determines whether an environment is objectively hostile." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "Although no single factor is determinative, pertinent considerations are: (1) 'the frequency of the discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "'Title VII, however, is not a general civility code.'" *Id.* (quoting *Faragher*, 524 U.S. at 788) (internal quotation marks omitted). So, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Of the five prongs Wilkinson must show to survive summary judgment on a hostile-work-environment claim, Defendants only address the last two: that the alleged harassment affected a term, condition, or privilege of employment and that the employer knew or should have known

about the harassment and failed to take prompt remedial action.[125]   And so, Defendants effectively concede that Wilkinson is a member of a protected class; he suffered unwelcomed harassment; and the harassment was based on his membership in a protected class.[126]   For harassment to affect a term, condition, or privilege of employment, it must be severe or pervasive enough to create an abusive and hostile work environment and alter a term or condition of Wilkinson's employment. "This element [*i.e.*, severe or pervasive] is disjunctive – if a single instance of the conduct ... was severe enough on its own to create a hostile work environment, then it need not have been pervasive for this element to be satisfied." *Abbt v. City of Hous.*, 28 F.4th 601, 608 (5th Cir. 2022) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005) ("The Supreme Court has stated that isolated incidents, if egregious, can alter the terms and conditions of employment.")).  "This prong of the test has both an objective and subjective element – [the Fifth Circuit] consider[s] whether a reasonable person would have found that the harassment created a hostile work environment and also whether the harassment created a hostile work environment for the plaintiff herself." *Id.*

        "'An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment.'" *Wantou*, 23 F. 4th at 433 (quoting *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007)).  "'The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of "pervasive," thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.'"   *Id.* (quoting *Lauderdale*, 512 F.3d at 163).

---

[125] R. Doc. 42-2 at 13-17.  With respect to the fifth prong, Defendants argue that Patel "did not think that Rosa made any harassing comments to Wilkinson, so it was not necessary for Patel, MyHospitality, or Pinnacle to take any corrective action." *Id.* at 17.  The Court need not address this fifth prong, however, because, for the reasons set forth below, Wilkinson's claim fails at the fourth prong.

[126] *See Kellam v. Metrocare Servs.*, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) (observing that a failure to respond to or adequately brief an argument results in abandonment, waiver, or concession of the argument) (collecting cases).

Therefore, "'the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.'" *Id.* (quoting *Lauderdale*, 512 F.3d at 163). In addition to the frequency and severity of the alleged conduct, the Fifth Circuit considers "whether 'it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okeke v. Adm'rs of Tulane Educ. Fund*, 2022 WL 1025991, at *5 (5th Cir. Apr. 6, 2022) (quoting *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).

Defendants argue that Wilkinson cannot show that he endured any extreme distress or that the comments were frequent or severe enough because the remarks allegedly lasted for only a couple of weeks to a month.[127] In opposition, Wilkinson devotes just two sentences in support of his claim, stating:

> For essentially the[] same reasons [as those which support his discrimination claims], plaintiff demonstrates a case for hostile work environment based on race, sex, and national origin discrimination. Ms. Rosa's comments and behavior towards Mr. Wilkinson, in front of his staff, quintessentially "destroys a protected classmember's opportunity to succeed in the work place."[128]

Wilkinson offers no additional specific evidence in support of his hostile-work-environment claim.[129]

---

[127] R. Doc. 42-2 at 15 (citing R. Doc. 42-12 at 12 (deposition of Kristen Garrett Wilkinson, Wilkinson's wife) (Rosa's comments lasted "maybe a couple weeks, a month, maybe")). But Wilkinson seems to imply that the comments were made from August to December. *See* R. Doc. 48 at 21 (arguing that Wilkinson complained about Rosa's conduct during the four months before his termination). This dispute of fact, which is not addressed by the parties, is immaterial because the comments do not create a hostile work environment where, as discussed below, there is no evidence that they were frequent or severe, or unreasonably interfered with Wilkinson's work performance.

[128] *Id.* at 19 n.5 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

[129] To carry his burden on summary judgment, Wilkinson "must 'identify specific evidence in the record and articulate the precise manner in which that evidence supports his ... claim,'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)) (alteration omitted), because "[s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012). While Wilkinson fails to articulate the precise manner in which the relatively thin record evidence supports his claim for hostile work environment, and, although this could be sufficient grounds to grant summary judgment in favor of Defendants, the Court examines the merits of his claim on the record as developed.

On the record before the Court, Wilkinson's work environment is not objectively hostile. First, the comments that Rosa allegedly made for a period of less than a month (*viz.*, that she believed females made better general managers than males, that Hispanic employees work harder, faster, and cheaper, and that Wilkinson should wear "tight pants") "pale in comparison, both in severity and frequency, to those found [actionable] in the cases" previously decided by the Fifth Circuit. *See Daniel*, 2022 WL 1055578, at *4. Rosa's statements, while offensive, do not equate to the reprehensible, offense-laden racial epithets the Fifth Circuit has found sufficient to state a claim for hostile work environment. *See, e.g., Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) ("The incident Woods has pleaded – that his supervisor directly called him a 'Lazy Monkey A__ N__' in front of his fellow employees – states an actionable claim of hostile work environment [even if but a single incident]."). Nor were the statements frequent or extreme enough to be akin to other actions the Fifth Circuit has held could constitute a hostile work environment. *See, e.g., Abbt*, 28 F.4th at 608 (holding that "a reasonable person could consider the repeated viewing of her intimate, nude video by her coworkers to be sufficiently severe to constitute sexual harassment" and "objectively create[] a hostile work environment").

Courts in the Fifth Circuit have consistently held that conduct worse than Rosa's inappropriate but limited statements has failed to reflect the severity or pervasiveness as would give rise to a claim. *See, e.g., Fisher v. Bilfinger Indus. Servs. Inc.*, 2021 WL 5272214, at *1 (5th Cir. Nov. 11, 2021) (concluding that boss "repeatedly" calling black employee "boy" was insufficient); *Peterson v. Linear Controls, Inc.*, 757 F. App'x 370, 374 (5th Cir. 2019) (concluding that plaintiff did not allege sufficiently severe or pervasive conduct where he worked for employer for six years, but his allegations regarding harsher job assignments concerned only one ten-day period); *Buisson v. Bd. of Supervisors of La. Cmty. & Tech. Coll. Sys.*, 592 F. App'x 237, 245 (5th

41

Cir. 2014) (concluding that supervisor calling Asian-American employee "chink" one time was insufficient); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 652 (5th Cir. 2012) (concluding that three comments that were "plainly offensive to a Hispanic person" made over ten years were insufficient); *Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (affirming summary judgment rejecting a hostile-work-environment claim when "alleged hostility occurred sporadically over a 27-month period"); *Williams v. City of Port Arthur*, 2022 WL 1183293, at *8 (E.D. Tex. Feb. 25, 2022) (finding that supervisor's single statement to black plaintiff that she would "never hire another black person" was not sufficiently severe or pervasive enough to support hostile-work-environment claim), *adopted*, 2022 WL 866407 (E.D. Tex. Mar. 23, 2022).  As directed to Wilkinson, a white American male, Rosa's comments are not any more severe than those held in these cases to be insufficient to support a claim.  Nor are the comments, made within a discrete segment of Wilkinson's two-year period of employment, pervasive or frequent enough to create a hostile work environment.  Accordingly, a reasonable person would conclude that Rosa's statements did not objectively create a hostile work environment.  Indeed, the comments are the type of "sporadic use of abusive language" that courts routinely conclude falls outside Title VII's purview.  *Faragher*, 524 U.S. at 788.

Further, Wilkinson has not produced any evidence showing that Rosa's comments "unreasonably interfere[d] with [his] work performance."  *Okeke*, 2022 WL 1025991, at *5; *see also Faragher*, 524 U.S. at 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment ....").  There is no indication that the comments destroyed Wilkinson's opportunity to succeed or interfered with his work performance. *Cf. Abbt*, 28 F.4th at 608 (concluding that work environment could be objectively hostile where plaintiff developed PTSD and was unable to return to work).  On the contrary, it appears that the

comments had no impact on his work performance.  For example, when asked during his deposition, "Did [Rosa] ever say that we need to get rid of you because you're not Hispanic?", Wilkinson testified, "Yeah, she did.  I laughed at it and moved on."[130]  Notably, Wilkinson's own words indicate that he did not perceive Rosa's comments as abusive or severe.  *See Bowen v. Univ. of Tex. Med. Branch*, 2022 WL 868707, at *12 (S.D. Tex. Feb. 14, 2022) (finding employer's comments not abusive and severe where plaintiff "laugh[ed] it off.... Jokes.  It's jokes."), *adopted*, 2022 WL 861506 (S.D. Tex. Mar. 23, 2022).  And, where there is no summary-judgment evidence indicating that the alleged comments affected Wilkinson ability to perform his job duties or affected his work performance, Wilkinson's hostile-work-environment claim fails.  *See Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 399-400 (5th Cir. 2016) (concluding that (1) racial slurs and "black faces" drawn in workplace bathroom stalls were insufficient to sustain a *prima facie* case of a hostile work environment where, in part, there was no evidence that the drawings interfered with plaintiff's work; (2) upside-down American flag to protest President Obama's election was insufficient to constitute hostile work environment where "no evidence tied this incident to interference with [the plaintiff's] work"; and (3) noose placed inside of plaintiff's hard hat did not establish a *prima facie* case where plaintiff presented no evidence as to how it affected the terms and conditions of his employment).  Accordingly, Wilkinson has failed to raise a genuine issue of material fact as to whether the harassment he suffered was severe or pervasive enough to alter the conditions of his employment.  Therefore, his hostile-work-environment claims are dismissed.

### F.  Louisiana Whistleblower Claims

  In this Order & Reasons, this Court has determined that all of Wilkinson's federal claims

---

[130] R. Doc. 42-9 at 29.

should be dismissed and so now the Court must decide whether to exercise supplemental jurisdiction over his remaining state-law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction if, as here, it "has dismissed all claims over which it has original jurisdiction." "District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over a state claim once all federal claims are dismissed." *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993). In making its decision, this Court considers "'judicial economy, convenience, fairness, and comity.'" *Manyweather v. Woodlawn Manor, Inc.*, 2022 WL 2525732, at *6 (5th Cir. July 7, 2022) (quoting *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016)). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). Because the analysis of the state-law claims follows that of the federal claims, the Court will exercise supplemental jurisdiction in the interest of judicial economy.

Wilkinson alleges two whistleblower claims, both concerning his complaints about the Hampton Inn's mold infestation: a violation of Louisiana's Environmental Whistleblower Act, La. R.S. 30:2027 ("LEWA");[131] or, in the alternative, a violation of Louisiana's Whistleblower Act, La. R.S. 23:967 ("LWA").[132] Defendants argue that both claims fail because "Wilkinson was terminated due to his poor job performance and insubordination,"[133] "lack of leadership, frequent absences, and threats to quit,"[134] "not for reporting the existence of mold at the Hotel."[135] Absent summary-judgment evidence to the contrary, the Court agrees.

"Claims made under ... the LEWA are analyzed under the *McDonnell Douglas*

---

[131] R. Doc. 13 at 30.
[132] *Id.* at 32-33.
[133] R. Doc. 42-2 at 20 (citation omitted).
[134] *Id.* at 21 (citations omitted).
[135] *Id.* at 20.

framework." *Breaux v. Rosemont Realty*, 768 F. App'x 275, 277-78 (5th Cir. 2019) (citing *Roberts v. Fla. Gas Transmission Co.*, 447 F. App'x 599, 601 (5th Cir. 2011) (applying the *McDonnell Douglas* framework to a LEWA claim). So, too, are claims made under the LWA. *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 415 (5th Cir. 2018) (citing, *inter alia*, *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 805 n.1 (5th Cir. 2007) ("the standards governing both claims [under Title VII and § 23:967] are materially indistinguishable"); *Smith v. AT&T Sols.*, 90 F. App'x 718, 723 (5th Cir. 2004) ("[w]hile the Louisiana Supreme Court has not spoken directly on whether [Title VII's] framework applies to section 23:967 cases, Louisiana courts have often looked to federal anti-discrimination jurisprudence in interpreting Louisiana's anti-discrimination statutes"); and *Tatum v. United Parcel Serv., Inc.*, 79 So. 3d 1094, 1103-04 (La. App. 2011)); *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 328 (5th Cir. 2008) ("'The appropriate framework for analyzing a retaliation claim under the Louisiana whistleblower statute is the same as that applied in Title VII retaliation cases.'" (quoting *Smith v. AT&T Sols., Inc.,* 90 F. App'x 718, 723 (5th Cir. 2004) (alteration omitted)). Accordingly, under both the LEWA and the LWA, plaintiffs are first required to make out a *prima facie* case. If a plaintiff does so, the burden shifts to the defendant to "'articulate a legitimate, non-discriminatory reason for its decision to terminate him.'" *Breaux*, 768 F. App'x at 278. (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005)). "If the defendant meets its burden, the burden of persuasion is on the plaintiff to show that the defendant engaged in ... for purposes of the LEWA [and the LWA], retaliation by, for example, showing the defendant's stated reason was pretextual." *Id.*

As reviewed above,[136] even assuming Wilkinson can establish a *prima facie* case under

---

[136] *See supra* Sections III(B)(1)(b), III(B)(2)(b), and III(C)(2).

these statutes, his LEWA and LWA claims fail because he cannot show that a genuine issue of fact regarding pretext exists.  Accordingly, his state-law claims also must be dismissed.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 42) is GRANTED.

New Orleans, Louisiana, this 3rd day of August, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE